NEWMAN COWEN and Others, as Executors, etc., of MARKS
RINALDO, Deceased, Respondents, *v.* MINNIE RINALDO and
Others, Appellants, and Others, Respondents.

82   479
13ap34;
82h 479
f162a148
f162a152
82h      479
39 Mis⁸362

*Will — a trust to collect rents, etc., void as unduly suspending the power of aliena-*
*tion — when not within the provisions of the statute — when sustained by cutting*
*off ulterior limitations — when the entire will is invalid — the testator's inten-*
*tion not contravened in order to sustain the will.*

A testator by his will suspended the power of alienation of all his real and per-
sonal property during the lives of two of his children, then in being, until their
arrival at twenty-one years of age, and in case of the death of such children,
before reaching the age of twenty-one years, directed that his real estate be
sold and that certain of the proceeds be paid to certain legatees absolutely, and
that certain other portions thereof be held during additional lives or upon addi-
tional contingencies.

*Held*, that as the right to suspend the absolute vesting of the ownership in any
part of the estate could only be limited upon the lives of such two children of
the testator, the attempt to engraft upon such suspension additional limitations
of ownership was not authorized by the statute, and that such limitations were
necessarily void;

That if, however, it were possible to separate the limitations which were void
from the bequests which were valid, it was the duty of the court to do so.

The trust, provided for by the subdivision of the statute authorizing the creation
of a trust to sell, mortgage or lease lands for the benefit of legatees, or for the
purpose of satisfying any charge thereon, is a provision for alienation and not
for the suspension of the power of alienation. Such a trust is a trust to sell
land, or some interest in it, and the land descends subject to the execution of
the trust, but no power is given by the statute to collect the rents.

The evident intention of the statute is to permit the creation of a trust to sell land
and receive the proceeds thereof for the benefit of creditors or for the benefit of
legatees, or for the purpose of satisfying any charge thereon, to mortgage
land and receive the proceeds thereof for the benefit of legatees, or for the pur-
pose of satisfying any charge thereon, and to lease lands for a given sum which
the trustee is to receive for the benefit of legatees, or for the purpose of satis-
fying any charge on said land, the fee of the land descending, subject to such
trust, to the parties in whom the title would otherwise vest.

Every will must be interpreted according to the intention of the testator, and the
court will, whenever possible, adopt such a construction as will avoid intestacy
on the part of the testator.

Where the estate of a testator, both real and personal, is by his last will and testa-
ment devised and bequeathed to his executors, in trust for a certain period, to
collect the rent and income and profits of the real estate and the whole of the
personal estate, and after paying therefrom the legacies by such will bequeathed
and the interest on the mortgages, taxes, assessments, fire insurance and repairs

on the real estate, to apply the remainder of the rents of the real estate, together with the income and principal of the personal estate, to the paying off and discharging of the principal of the mortgages on the real estate, the trust attempted to be created is void, for the reason that the executors are directed to hold the estate in trust during the period limited by the terms thereof, for the purpose of collecting the rents, issues and' profits, and applying the same to a purpose not permitted by the statute.

The validity of a will depends upon the intention of the testator as it may be interpreted by the language used therein, viewed in the light of his situation. If some of the provisions of the will may be cut off without interfering with the primary objects thereof, such provisions will be cut off, but if the primary object is cut off the ulterior provisions cannot be maintained, and must necessarily fall.

Although it may have been the intention of a testator to dispose by his will of all his property, and his will is to be construed, if possible, to carry out that intention, yet if he has attempted so to do, by illegal means, the court cannot, in order to sustain the will, put an interpretation upon the language contained in the will which is not in harmony with the manifest intention of the testator.

APPEAL by the defendants, Herman Rinaldo and Jennie A. Rinaldo, his wife, and by David Rinaldo and Minnie Rinaldo, his wife, from that portion of a judgment of the Supreme Court entered in the office of the clerk of the county of New York on the 4th day of June, 1894, upon the decision of the court, rendered after a trial at the New York Special Term, which adjudges that all of the provisions and clauses of the will of Marks Rinaldo, deceased, are legal and valid, and also by Herman Rinaldo and Jennie A. Rinaldo, his wife, from an order entered in said clerk's office on the 15th day of June, 1894, denying the motion of such defendants for an additional allowance.

*Geo. W. Wickersham, J. L. Cadwalader, Hamilton Wallis, H. M. Goldfogle* and *A. D. Lind,* for the appellants.

*D. G. Rollins, M. B. Blumenthal, R. Tuska, F. R. Minrath, A. Lyon* and *Myer S. Isaacs,* for the charitable institutions, respondents.

*David Leventritt,* for Minnie Rinaldo, respondent.

VAN BRUNT, P. J.:

This action was brought to procure the judicial construction of the will of Mr. Marks Rinaldo, who died November 26, 1892. The

will was admitted to probate on the 31st of April, 1893. The testator died seized of a considerable amount of personal and real estate, the real estate being mortgaged. By said will the testator, after having directed the payment of certain legacies and annuities which he charged upon his real and personal estate by the eighteenth and nineteenth clauses thereof, provided as follows :

"*Eighteenth.* I give, devise and bequeath to my executors, hereinafter named, and such of them as shall qualify, and the survivors or survivor of them, and such successors as they shall appoint, as hereinafter provided, all my real and personal estate until my son Harry shall become twenty-one years of age or die, whichever event shall first happen ; and if he should die before my daughter Amelia should become twenty-one years of age, then until she should become twenty-one years of age or die before such period, in trust, nevertheless to collect the rent, income and profits of said real estate and the whole of said personal estate, and after paying therefrom the legacies hereinbefore given, the interest on mortgages, taxes, assessments, fire insurance and repairs on said real estate, to apply the remainder of said rents of my real estate, together with the income and principal of my personal estate, to the paying off and discharging of the principal of the mortgages on my real estate.

"*Nineteenth.* Upon my son Harry becoming twenty-one years of age, or upon his death, and if he should die before my daughter Amelia should become twenty-one years of age or death before such period, I order my executors, or such of them as may qualify, and the survivors or survivor of them, and the successors of them (as hereinafter provided) to sell all my real estate at public sale and execute proper deeds therefor, and out of the moneys so realized to pay :

" (a) To my son David (now residing at Jersey City) the sum of fifteen thousand dollars.

" (b) To my grandson Lawrence (son of said son David) the sum of five thousand dollars.

" (c) To my son Samuel the sum of fifteen thousand dollars, if at that time his present wife shall have died, and if she should still be alive at that time to invest said sum of fifteen thousand dollars in first mortgage upon improved property in the city of New York,

and pay the interest realized therefrom half yearly to my said son Samuel as long as his present wife shall live, and upon her death to pay over to him (said Samuel) said principal sum of fifteen thousand dollars; should he, however, die before her, then upon his death said sum of fifteen thousand dollars shall be divided in equal shares between my sons David, Joel, Edward and Harry and my daughters Hannah and Amelia, share and share alike.

"(d) To my daughter Hannah, wife of Henry Black, the sum of ten thousand dollars, and in addition thereto to invest the sum of twenty-five thousand dollars in first mortgage upon improved real estate in the city of New York, and pay the interest realized therefrom half yearly to my said daughter Hannah, and upon her death to pay over said principal sum of twenty-five thousand dollars to her children in equal shares. Should she, however, die without leaving any children, then said sum of twenty-five thousand dollars shall be divided between my sons Samuel, David, Joel, Edward and Harry, and my daughter Amelia in equal shares.

"(e) To my son Joel the sum of fifteen thousand dollars.

"(f) To my son Edward the sum of fifteen thousand dollars.

"(g) To my daughter Amelia the sum of ten thousand dollars, and in addition thereto to invest the sum of forty thousand dollars in first mortgages upon improved real estate in the city of New York, and pay the interest realized therefrom half yearly to my said daughter Amelia, and upon her death to pay over said principal sum of forty thousand dollars to her children in equal shares. Should she, however, die without leaving any children, then said sum of forty thousand dollars shall be divided between my sons Samuel, David, Joel, Edward and Harry and my daughter Hannah in equal shares.

"(h) To my son Harry the sum of fifteen thousand dollars.

"(i) To my son Isaac the sum of ten thousand dollars, if at that time his present wife shall have died or he shall have been divorced from her by an absolute divorce and shall have married a decent Jewish woman.

"(k) To invest the sum of fifteen thousand dollars in first mortgage upon improved real estate in the city of New York and pay the interest realized therefrom half yearly to my beloved wife as long as she may live, and upon her death to divide the principal

sum between my sons David, Joel, Edward and Harry and my daughters Hannah and Amelia in equal shares.

"(l) Should there be any balance left of my real and personal estate I order my executors to pay

"1. To the Hebrew Benevolent and Orphan Asylum Society of the City of New York the sum of one thousand dollars;

"2. To the Mount Sinai Hospital of the City of New York the sum of one thousand dollars;

"3. To the Montefiore Home for Chronic Invalids the sum of five hundred dollars.

"4. To the Hebrew Free School Association of the City of New York the sum of five hundred dollars.

"(m) Should there be any further balance left of my estate (real and personal), I order my executors to divide said balance in equal shares between my sons Samuel, David, Joel, Edward, Harry and my daughters Hannah and Amelia, share and share alike."

The clauses of the will above stated are attacked upon the ground that by them are attempted to be established trusts which are contrary to the provisions of law; as to some of them because of the illegal suspension of the power of alienation, as to the rest because of the illegal direction in respect to the accumulation and disposition of the rents, income and profits arising from the estate.

There is no doubt but that in respect to some portion of the estate the testator has designated a legal and valid period for the suspension of the power of alienation of the absolute ownership thereof, and that in respect to other portions he has attempted to suspend the power of alienation during three lives instead of two. Thus, by the eighteenth clause of his will he suspends the power of alienation during the lives of his children Harry and Amelia, limited upon their arrival at twenty-one years of age; and then by nineteenth clause he directs that his real estate be sold, and that certain of the proceeds be paid to certain legatees absolutely, and that certain other portions be held during additional lives or upon additional contingencies. It is clear that the right to suspend the absolute vesting of ownership in any part of this estate could only be limited upon the lives of Harry and Amelia, they being two persons in being and within the provisions of the statute. The attempt to engraft upon this suspension additional limitations of ownership

was not within the statute, and such limitations must necessarily be void. If it were possible to separate the limitations which are void from the bequests which are valid, it is the duty of the court so to do, and if this were the only question involved in the construction of this will perhaps this might be done. But there is another objection made to a provision of this will which underlies the whole of these provisions, and that is, that the testator has attempted to create a trust for purposes not permitted by the statute. This objection, if well taken, affects the whole scheme of the will, and it is impossible to segregate it from the subsequent provisions, because they are all dependent upon this one scheme. It is to be observed that the estate, both real and personal, is devised and bequeathed to the executors in trust for a certain period to collect the rent, income and profits of said real estate, and the whole of said personal estate, and, after paying therefrom the legacies hereinbefore given, the interest on mortgages, taxes, assessments, fire insurance and repairs on said real estate, to apply the remainder of said rents of his real estate, together with the income and principal of his personal estate, to the paying off and discharging of the principal of the mortgages on his real estate.

The Revised Statutes (vol. 1, p. 728) provides that express trusts may be created for any or either of the following purposes:

" 1. To sell lands for the benefit of creditors.

" 2. To sell, mortgage or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon.

" 3. To receive the rents and profits of lands and apply them to the use of any person during the life of such person, or for any shorter term, subject to the rules prescribed in the first Article of this Title.

" 4. To receive the rents and profits of lands and accumulate the same for the purposes and within the limits prescribed in the first Article of this Title."

It is urged upon the part of the appellants that the trust attempted to be created by the will of the testator does not come within the provisions of the statute. In answer to this contention it is claimed, upon the part of the respondent, that the power given to the executors to collect rents and manage generally the real estate carries with it by implication the power to lease, and that this brings the trust within the express terms of the statute.

That such is not a correct interpretation of the statute was announced in the case of *Hawley* v. *James* (16 Wend. 62), and does not seem to have been departed from up to the present time. It was there held that the trust provided for by the subdivision of the statute authorizing the creation of a trust to sell, mortgage or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon, is a provision for alienation, and not for the suspension of the power of alienation; that such a trust is a trust to sell land or some interest in it, and that the land descends subject to the execution of the trust, subject to the power of sale, subject to the power to mortgage, subject to the power to lease, but there is no power reserved in the trust to collect rents. The provisions authorizing the collection and receipt of rents and profits of land are separate and distinct. The evident intention of the statute was the creation of a trust to sell land and receive the proceeds thereof for the benefit of creditors, or for the benefit of legatees, or for the purpose of satisfying any charge thereon, to mortgage land and receive the proceeds thereof for the benefit of legatees or for the purpose of satisfying any charge thereon, and to lease lands for a given sum which the trustee is to receive for the benefit of legatees, or for the purpose of satisfying any charge on said land, the fee of the land descending.

The cases of *Savage* v. *Burnham* (17 N. Y. 561); *Garvey* v. *McDevitt* (72 id. 556); *Van Schuyver* v. *Mulford* (59 id. 426); *Harrison* v. *Harrison* (36 id. 543); *Adams* v. *Perry* (43 id. 487), and *Henderson* v. *Henderson* (113 id. 1), which are cited by the respondents, in no way attempt to question this construction of the statute.

Applying such construction to the language of the will under consideration, and having in view the fact that the interpretation of each will is to be according to the intention of the testator, and that intestacy shall be avoided wherever possible, it seems to us that it is impossible to come to any other conclusion than that there was an attempt upon the part of the testator to direct his executors to hold his estate during the lives of his children Harry and Amelia, limited by their arriving at twenty-one years of age, for the purpose of collecting the rents, issues and profits, and applying the same to a purpose not permitted by the statute. This, therefore, renders

void under the statute the whole eighteenth clause, and all dispositions dependent thereon.

It is urged, however, that certain dispositions may be held valid, although others may come within the restrictions of the statute. And our attention is called to the cases of *Schettler* v. *Smith* (41 N. Y. 328); *Cross* v. *U. S. Trust Co.* (131 id. 330), and *Tiers* v. *Tiers* (98 id. 568), as upholding this contention. But in all these cases it was the alternative trust which was found to be void and not the principal trust; and the courts have held that the principal trust might stand and the alternative trust fall. Thus, in *Tiers* v. *Tiers* it was held that the ulterior contingent limitation was quite separable from the primary trust and merely incidental, its only purpose being to provide for a contingency which might never arise, and the failure of that provision would not affect the general scheme of the will. And it was held that in such cases the rule is well settled that an ulterior limitation, though invalid, will not be allowed to invalidate the primary dispositions of the will, but will be cut off in the case of a trust which is not an entirety. But we have failed to find any case in which the primary trust has been held to be invalid, and the ulterior trusts or disposition of the will have been held to be good.

The will hangs upon the intention of a testator as it may be interpreted by the language used therein viewed in the light of his situation. You may lop off some of the provisions of the will without interfering with the primary objects of the will. The primary objects may still remain and those that follow may be cut off. But if you cut off the primary object, upon what do the ulterior provisions depend? What support have they? How can they be maintained? They must necessarily fall.

This brings us to the next proposition, which is probably embraced in what has been already stated, but to which it is necessary to call special attention — and that is to the provisions for the charitable associations. The testator provided that should there be any balance left of his real and personal estate (that is, after paying the legacies directed to be paid out of the proceeds of the sale of his estate) he ordered his executors to pay, etc. It seems to be evident from the language of this clause in the will that it is dependent upon that which precedes it, which we have attempted to show is invalid.

It is — should any balance be left after doing these things. It is not a general gift to these charitable institutions, but a gift out of a fund which, if our construction of the will is correct, the executors have no power to create; and, therefore, there is nothing from which it can be paid.

The clause which is called the residuary clause is subject to the same construction. It is " Should there be any further balance left of my estate (real and personal) I order my executors to divide said balance in equal shares between my sons Samuel, David, Joel, Edward, Harry and my daughters Hannah and Amelia, share and share alike."

It was not as in the case of *Lamb* v. *Lamb* (131 N. Y. 227) a disposition of surplus undisposed of, but it was a disposition of the balance of a fund attempted to be created, as has already been observed, by an illegal provision in the will. While it may have been the intention of the testator to have disposed of all his property, and his will is to be construed, if possible, to carry out that intention, yet, where he has attempted so to do by illegal means, the court cannot put an interpretation upon the language contained in the will which is certainly not in harmony with the manifest intention of the testator. The clause under consideration is not a general residuary clause, but is a disposition of a special fund to be created in a certain way. We think, therefore, that the residuary clause became inoperative with the other clauses considered.

The judgment should be reversed and a decree entered construing the will in harmony with the views expressed in this opinion, with costs to all parties appearing to be paid out of the estate.

PARKER and O'BRIEN, JJ., concurred.

Judgment reversed, decree to be entered construing the will as directed in opinion, with costs to all parties appearing to be paid out of the estate.