Virginia K. Hascall, Appellant, *v.* Vincent C. King, Jr., and Anna Louisa King, Individually and as Executor and Executrix of and Trustees under the Will of Vincent C. King, Deceased, Respondents, and Mamie K. Smith et al., Appellants.

1. Trust to Use Rents and Profits to Pay Mortgages, a Trust for Accumulation. The application of part of the income of a trust estate to the payment of mortgages thereon, thereby increasing the capital of the estate by decreasing the burden thereon, constitutes an accumulation within the meaning of the Revised Statutes (1 R. S. 726, §§ 37, 38) prohibiting the accumulation of rents and profits of real estate, except during the minority and for the sole benefit of minors, and is invalid notwithstanding such accumulation takes the form of an extinguishment of indebtedness, and is limited to the surplus income remaining after the payment of an annuity and restricted to the lifetime of the annuitant.

2. Trust to Lease Real Property for above Purpose Invalid. The authority to create an express trust to "lease," as well as sell or mortgage real property for the benefit of annuitants or other legatees, or for the purpose of satisfying any charge thereon, conferred by subdivision 2 of section 55 of the Revised Statutes (Vol. 1, p. 728), now section 76 of the Real Property Law (L. 1896, ch. 547), which defines the purposes for which express trusts may be created, does not authorize the creation of an express trust by will empowering the trustee to take the rents and profits of land and apply them, or part of them, during the lifetime of an annuitant to the payment of mortgages, as this would decrease the burden upon the trust estate and thereby increase the capital thereof in violation of the provisions which prohibit the accumulation of the rents and profits, except during the minority and for the sole benefit of minors.

3. Primary Object of Trust Sustained although Secondary Object Invalid. The primary object of a testamentary trust being to provide an annuity for testator's wife, and being separable from a secondary object and ulterior provision for the payment of mortgages out of any income remaining after paying such annuity, is valid and will be sustained although the secondary provision be void.

*Hascall* v. *King*, 28 App. Div. 280, modified.

(Argued January 11, 1900; decided February 27, 1900.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered

April 22, 1898, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

This action was brought for the construction of a will, and for the partition of the real estate of the testator. The will, after giving to his son, Vincent C. King, Jr., his interest in the business of a firm of which the testator was a member, and in certain factory property, subject to the payment to his widow during her life, or as long as she remained his widow, of $2,500 a year, provided that, when the real estate subsequently mentioned in the will was relieved from mortgages, so that a clear net income of $5,000 a year could be realized therefrom, to be paid to his widow, his son should then be relieved from the payment of the said $2,500 ; he also devised to his son a farm at Wilton, Saratoga county ; and, further, by the 6th clause of his will, gave to his executors and trustees the rest of his personal estate, and, as stated in the will, "all the real estate of which I may die seized or possessed (excepting only the premises in which I may reside and be the owner of at the time of my death, and which I have specifically devised in the fifth clause of this my last will) in trust," to collect the rents and income and pay the taxes, assessments and charges and for the repairs thereon ; to pay to his widow $2,500 a year as long as she remained his widow, and to pay her a like further sum in case his son, Vincent C. King, Jr., should default in the payments to the widow required by the will to be made by him, and "after the payment of the taxes, assessments, repairs, interest on mortgages, insurance and all charges against my estate, and the payment of the income hereinbefore named to my wife, I direct my said executors and trustees to apply the balance of the net income of my estate to the payment and discharge of any and all incumbrances or liens of any kind upon my property;" and when all such payments were made he directed that the surplus income should be divided among his children. It was sought by this action to obtain such a construction of the will as would result in a judgment declaring void the trust therein

created and permitting a partition of the testator's real estate
and a distribution of his personal estate as though he had died
intestate.

The further material facts are stated in the opinion.

*Peter B. Olney* and *Nathaniel S. Smith* for appellants.
The 6th paragraph of the will is invalid, because it directs
an accumulation of rents and income for an unlawful purpose,
contrary to the statute. (1 R. S. 726, §§ 37, 38; 773, 774,
§§ 3, 4; *Pray v. Hegeman*, 92 N. Y. 508; *Boynton v. Hoyt*,
1 Den. 54; *Cowen v. Rinaldo*, 82 Hun, 485; *Matter of
Fisher*, 25 N. Y. Supp. 80; *Wells v. Wells*, 20 Abb. [N. C.]
225; *Matter of Hoyt*, 71 Hun, 13; *Matter of Hayden*, 77
Hun, 222; *Harris v. Clark*, 7 N. Y. 242; *Kennedy v. Hoy*,
105 N. Y. 134.) There can be a valid accumulation of rents,
income and profits of property only during minorities, and
for the sole benefit of minors. The accumulations of such
rents and income, and the application thereof generally to the
payment of the principal of mortgages upon real estate, is
invalid, and in the case at bar the accumulation of such rents
and income, and the application thereof to the payment of
mortgages, is such an essential part of the scheme of the will
that the other substantial provisions of the will, dependent
upon it, fall with it. (*Harris v. Clark*, 7 N. Y. 242; *Kil-
patrick v. Johnson*, 15 N. Y. 325; *Manice v. Manice*, 43 N.
Y. 303; *Pray v. Hegeman*, 92 N. Y. 509; *Barbour v. De
Forest*, 95 N. Y. 13.) The factory property and the Saratoga
farm, though by previous clauses in the will otherwise devised,
by the plain language of the 6th paragraph are brought and
included within the provisions of that clause. (*Van Nos-
trand v. Moore*, 52 N. Y. 12; *Noble v. Thayer*, 19 App. Div.
446; *Goodwin v. Coddington*, 154 N. Y. 283; *Banzer v.
Banzer*, 156 N. Y. 429.) The judgment of the Appellate
Division is erroneous, in that it defeats the purpose of the
statute prohibiting accumulations, and is against the weight of
the decisions construing the statute. (*Vail v. Vail*, 4 Paige,
332; *Matter of Rogers*, 22 App. Div. 429.) The jurisdiction

of the court to entertain this action, to determine the validity, construction or effect of the testamentary disposition attempted to be made by the testator by his will, and incidentally for a partition of the real estate, is well established. (Code Civ. Pro. §§ 1537, 1866, 2624; *Read* v. *Williams*, 125 N. Y. 566; *Allen* v. *Allen*, 149 N. Y. 280; *Corley* v. *McElmeel*, 149 N. Y. 228; *Weston* v. *Stoddard*, 137 N. Y. 127; *Ellerson* v. *Westcott*, 148 N. Y. 153.)

*William A. Boyd* for respondents. There was only included in the residuum the lands and premises described in the plaintiff's complaint as parcels 2, 3, 4 and 5. (*Campbell* v. *Beaumont*, 91 N. Y. 464; *Clarke* v. *Leupp*, 88 N. Y. 231; *Roseboom* v. *Roseboom*, 81 N. Y. 359; *Byrnes* v. *Stilwell*, 103 N. Y. 460; *Lambe* v. *Eames*, L. R. [10 Eq.] 267; *Oothout* v. *Rogers*, 59 Hun, 97; *Washbon* v. *Cope*, 144 N. Y. 297; *Benson* v. *Corbin*, 145 N. Y. 359; *Banzer* v. *Banzer*, 156 N. Y. 435; *Schettler* v. *Smith*, 41 N. Y. 341.) The provisions of the 6th paragraph of the will create a valid trust for the executors. (2 R. S. [9th ed.] 1997, § 55; *Garvey* v. *McDevitt*, 72 N. Y. 556; *Becker* v. *Becker*, 13 App. Div. 342; *Parks* v. *Parks*, 9 Paige, 110.) The provision contained in subdivision C of the 6th paragraph of the will is not a direction to accumulate a portion of the rents of the lands and premises. (*Matter of Gautert*, 136 N. Y. 109; *Cahill* v. *Russell*, 140 N. Y. 402.) If, however, this court should conclude that the direction contained in subdivision C of the 6th paragraph of the will, to apply the balance of the net income of the estate to the payment and discharge of any and all incumbrances or liens of any kind upon the property, is invalid, then such balance should belong to the persons presumptively entitled to the next eventual estate, and the provisions of the will in other respects are valid. (*Becker* v. *Becker*, 13 App. Div. 353; *Harrison* v. *Harrison*, 36 N. Y. 543; *Savage* v. *Burnham*, 17 N. Y. 561; *Williams* v. *Williams*, 8 N. Y. 538; *Phelps* v. *Pond*, 23 N. Y. 82; *Kilpatrick* v. *Johnson*, 15 N. Y. 323–326; *Van Schuyver* v. *Mul-*

18

*ford,* 59 N. Y. 432; *Kennedy* v. *Hoy,* 105 N. Y. 134; *Cowen* v. *Rinaldo,* 82 Hun, 486; *Tiers* v. *Tiers,* 98 N. Y. 573.)

Parker, Ch. J.   Since 1828 the Revised Statutes have in terms prohibited the accumulation of the rents and profits of real estate and of the income of personal property, except during the minority and for the sole benefit of minors.   (1 R. S. 726, sections 37, 38.)   The last sentence of section 38 establishes the penalty to be visited upon all attempts to offend against these provisions, and reads as follows : " And all directions for the accumulation of the rents and profits of real estate, except such as are herein allowed, shall be void."   The revisers, in their report, assigned as a reason for limiting the power of accumulation to one of the three cases specified in the statute of 39 and 40 George III (Ch. 98), namely, " during the minority of any person or persons who, under the deed or will directing the accumulation, would, if then of full age, be entitled to such rents and profits," that "it is to the period last indicated that the revisers propose to confine the power of accumulation, conceiving that this restriction furnishes the most effectual means of guarding against the abuses to which directions of this nature are admitted to be liable, and believing that it embraces the only case in which the purpose of the accumulation is such as ought to be sanctioned, namely, for the benefit of infants entitled to the next eventual estate."   The purpose of the revisers is made so clear by their report, and the language employed by them in drafting sections 37 and 38 so aptly expresses that purpose, that no case prior to this one can be found in this court where an attempt has been made to uphold a trust which did not provide that the accumulated income should, in part at least, be used for the benefit of minors. And the understanding of the courts, as well I think as that of the legal profession generally, as to the effect of sections 37 and 38, found expression through Judge Andrews in the case of *Pray* v. *Hegeman* (92 N. Y. 508–515) as follows : " The main purpose of the thirty-seventh section of the statute was not to

limit the term of accumulation previously permitted. The legislature intended to uproot the doctrine that the rents and profits of property might be accumulated and the enjoyment postponed, with a single exception." The learned judge further said: " The statute does not permit an accumulation of the rents and profits of land, or the income of personal property for the benefit of adults for any period of time, however short. The general policy of our law favors the greatest freedom of alienation of property consistent with the necessities of families, and the making of reasonable provision for the various contingencies which may be expected to arise, requiring the postponement of the vesting of estates, and the suspense of the power of alienating the *corpus* of property is permitted only within narrow limits. But the right to direct the accumulation of the fruits and profits of property is much more restricted than the right to control the property itself. It is permitted *only in a single case* and *for a single purpose*, viz., during minority, and for the benefit of the minor during whose minority the accumulation is directed." This was said by the learned judge not only with sections 37, 38 and 55 before him, but, as appears by his discussion of the cause, having in mind the case of *Hawley* v. *James*, which we shall consider later.

In the *Pray* case the will provided for an accumulation during minority and, after the expiration of minority, the giving of the income arising from the accumulated fund to the minor for life, the principal on his death to his issue or over to other persons. Other attempts have been made to thwart the purpose of the statute by appearance of conformity with its provisions, such as in the cases of *Boynton* v. *Hoyt* (1 Denio, 54); *Kilpatrick* v. *Johnson* (15 N. Y. 322), and *Barbour* v. *De Forest* (95 N. Y. 13), but without avail; for this court has ever been faithful in giving full force and effect to both the letter and spirit of the statute. Only two cases beside this one have been found in the reports of this state, where it has been held that a trust is valid which permits some part of the rents and profits of the real estate to be applied in

payment of mortgages thereon. Those cases will receive consideration later on, for our next step is to inquire whether the trust attempted to be created by this will authorized the accumulation of some part of the rents and profits of certain real estate, and the application thereof in payment of an indebtedness of the testator secured by mortgages on certain parcels of his real estate.

The will was executed on the 13th day of January, 1896, and in July following the testator died, leaving a widow and four children, all of whom were of full age. His real estate consisted of six parcels in New York county and a farm in Saratoga county. If all of the real estate be carried into the trust under the sixth clause of the will, as appellant contends, then its purpose is to provide that the net rent, income and profits of real estate of the value of about $206,000, plus the value, which has not been proved, of the farm and the parcel known as No. 49 West 88th street, shall, after the payment of the sums directed to be paid to the widow annually, be devoted to the payment of mortgages aggregating $46,500, one of which, at least, a mortgage for $25,000, was not due at the time of the death of the testator. If the factory property and the Saratoga farm are held to be disposed of by the third and fourth provisions of the will, then the rent, income and profits of the real estate devised in trust are of the value of $156,000, and are to be devoted, after the payment of a certain sum annually to the widow, to the payment of interest and principal of mortgages, aggregating $34,000.

In other words, the scheme of this provision of the will is to increase the value of the estate from $206,000 to $252,500, if one construction be adopted, and if the other, then from $156,000 to $190,000. The object of the provision is to have a certain portion of the income go into and form a part of the estate by decreasing the burden resting upon it, thereby inevitably increasing the capital of the estate ; and if such object can be carried out, the principal of the estate will ultimately be greater than at present by $46,500 in the one case and by $34,000 in the other. The result aimed at is precisely the

same as if the testator had directed that the surplus income
should be deposited and held until the principal of the estate
should be divided among those entitled to it at the termination
of the trust. If a part of the income of the real estate of
which the testator died seized and possessed be permitted to
be devoted to the payment of mortgages thereon, all of the
income may be devoted to such purpose, and hence it will be
easy for a man desiring to postpone the division of his estate
as long as possible to devote all of his estate to the purchase
of income-producing real estate having a substantial equity
over and above the mortgages thereon, and apply all of the
surplus income arising therefrom during two lives in being to
the reduction of the principal of the mortgages, and thus turn
over at the end of the trust term the principal of his estate,
plus the accumulations of such principal during a compara-
tively short or a very long period, dependent of course upon
the length of life of the survivor of the two persons by whom
the trust term is measured. For example, if A. should buy of
B. real estate of the value of $100,000, paying $50,000 on
account of the purchase price and giving a long term mort-
gage thereon for $50,000, with an agreement that the net
income of the property might be applied in payment of the
interest on the mortgage and in the reduction of the principal
until the entire principal sum should be paid, and should then
devise the real estate in trust with directions to the trustee to
thus apply the income during the lives of the two persons
named therein, there would be a fair chance that the distribu-
tion of the estate would be postponed until the mortgage could
be paid off and the capital of the estate to be distributed should
have been increased from $50,000 to $100,000. While the
case put as an illustration differs in detail from the one under
consideration, it does not differ in principle, and if the one is
authorized by statute, so is the other.

The suggestion that a restricted meaning should be given to
the word "accumulation" as used in the statute, which would
operate to make it ineffective unless the trustees be directed
to retain the income for a considerable time to await the matur-

ing of mortgages, has no support either in the judicial history
which led to its use by the revisers or in the spirit of the
statute employing it; but it should be said in passing that the
mortgage of $25,000 did not become due until some time after
the probate of the will. The capacity which a man had in
England under the common law to lock up the income of his
estate, whether real or personal, was finally carried to such
extremes that a will was made in 1796, by which a testator
devised his real estate, the income of which was four thousand
pounds per annum, and his personal estate estimated at half a
million pounds sterling, to trustees to accumulate for nine lives,
when by the ordinary chances of life the aggregate would
amount, at interest, to over nineteen million pounds. (*Thel-
lusson* v *Woodford*, 1 B. & P. N. R. 396; *S. C.*, 4 Vesey, 227;
11 Vesey, 112.) This will contributed its part toward per-
suading Parliament of the wisdom of passing the act to which
reference was made when citing the report of the revisers of
our statutes, and in bringing about the still more drastic action
on the part of the legislature. The meaning which the word
"accumulation" has in course of time come to have in our law
is stated in the Century Dictionary as follows: "The adding
of the interest or income of a fund to the principal, pursuant
to the provisions of a will or deed *preventing its being
expended.* The law imposes restrictions on the power of a
testator or creator of a trust to prohibit thus the present
beneficial enjoyment of a fund in order to increase it for a
future generation."

It is precisely that which is attempted in this case, namely,
a withholding of a portion of the income from present bene-
ficial enjoyment, to the end that the estate may be augmented
in value, and thus, at the termination of the trust, pass to those
whom the testator would have enter into the enjoyment of it
at that time. Had the testator intended otherwise, he could
readily have provided for satisfying the incumbrances by a
sale of one or more of the parcels of real-estate that he owned
in the city of New York. It was all marketable real estate,
but he chose not to sell it, and instead attempted to build a

trust on a plan in violation of the letter and the spirit of the statute which prohibits the swelling of an estate by the accumulation of income, except for the benefit of minors and during their minority. The books will be searched, I think, in vain for a case in this state, prior to this one, in which it is suggested that the application of the income of a trust estate in the payment of mortgages does not constitute an accumulation, as that word is employed in the statute. The other view is adopted in the few cases in which the question was presented. *In re Fisher's Estate* (25 N. Y. Supp. 79) Surrogate RANSOM had up for consideration a will empowering executors to pay off mortgages by applying for that purpose 15% of the net income of the estate, and it was held that the trust was void, because in violation of sections 37 and 38 of the statutes. The learned surrogate, in the course of his opinion, said: "The application of a part of the income of the trust estate for the payment of mortgages on the real estate, forming part thereof, is invalid, as it provides for an accumulation of such income for a purpose not permitted by the statute. * * * It goes into, and forms part of, such estate, and increases the capital, the income of which is distributable under the trusts in the will, and the augmented principal ultimately. The provision is in effect precisely the same as if the testator had, in so many words, required the trustee to apply the income to swell the principal of the trust fund." *Wells* v. *Wells* (30 Abbott's New Cases, 225) was a suit in equity brought for the construction of a will, the second clause of which in part provided: "But if there is not enough derived from the proceeds of said sale (referring to a piece of property that he had ordered sold for the payment of debts) to pay all of my said debts (and the court, in construing the will, held the debts thus referred to were debts secured by mortgage upon the lands affected), that then for my said executors, or the survivor of them, to apply the net income from what other property I may die possessed of towards the payment of said debts, until all my said debts are paid in full." This is held to have been in violation of the provisions of the Revised

Statutes regulating the accumulation of rents and profits. In the *Matter of Hoyt* (71 Hun, 13), the will in part directed the executors to lease all the rest, residue and remainder of the testator's real and personal property, and after deducting the taxes, insurance and interest on mortgages from the rents and income arising therefrom, to deposit the balance in a savings bank in order to create a fund to liquidate or help pay off an indebtedness against the estate, and this is held to have been in contravention of the statute and void. In *Matter of Hayden* (77 Hun, 219) the testator did not provide in terms for the accumulation of income, but in carrying out the provisions of his will it so happened that there was a small accumulation of income from securities set apart for the production of annuities, and the question presented was whether such amount of income should have been paid to the two daughters of testator upon the division of the estate, or whether it should be held as principal by the executors of the will as trustees of the shares of the daughters under the codicil, and it is held in an opinion written by Presiding Justice VAN BRUNT that the testator " had no power  *  *  *  by any means, direct or indirect, to prevent the absolute vesting of the income derived from his estate in somebody, and he could only direct any portion of such income to be accumulated during the minority of the owner of the share of his estate from which it was derived." In *Matter of Rogers* (22 App. Div. 431), Mr. Justice CULLEN tersely stated the proposition in these words : " But if a testator's intent is to make that principal which is income in the case of a trust of the nature of the one before us, such intent is not in conformity with law, but in express contravention of it." Other cases in which it is assumed without discussion that such a disposition of income constitutes an accumulation within the meaning of the statute, will be referred to later on, when I come to an examination of the cases in which sections 37, 38 and 55, and their relation to each other are directly considered.

But I pass from the consideration of the question whether there was an accumulation in this case, with the assertion

that it cannot be denied that the will provides for the increase of the estate from the rents, income and profits arising therefrom, and it none the less provides for its enhancement from the income of the trust estate, because the method provided takes the form of an extinguishment of indebtedness.   The statute aims to prevent such a disposition of an estate as would deprive some one of 'the present enjoyment of each and every dollar of the net income, with the single exception of minors, and the court should give full effect to the statute, and not countenance an accumulation of income by indirection where it would not by direction.

We come now to the section which is put forward in justification of a decision that not only opens a door to a violation of the provisions of sections 37 and 38, but points out a method by which it can be done as effectively as if the statute in terms permitted the investment of the income arising from a trust estate during a period of two lives in being in the purchase of additional real estate.   The method may not be quite as convenient of execution, as it requires, on the part of the testator, in his lifetime, other action than that of simply making a will; but it is fully as effective, as has already been shown.

Subdivision 2 of section 55 of the Revised Statutes (Vol. 1, p. 728) is relied upon as creating an exception to the rule established by the statute against accumulations, an exception which, if allowed, may be destructive of the rule.   Section 55 (now section 76 of the Real Property Law) reads as follows :

" Purposes for which express trusts may be created.

" An express trust may be created for one or more of the following purposes :

" 1. To sell real property for the benefit of creditors ;

" 2. To sell, mortgage or lease real property for the benefit of annuitants or other legatees, or for the purpose of satisfying any charge thereon ;

" 3. To receive the rents and profits of real property, and apply them to the use of any person, during the life of that person, or for any shorter term, subject to the provisions of law relating thereto ;

19

"4. To receive the rents and profits of real property, and to accumulate the same for the purposes, and within the limits, prescribed by law."

It is under the second subdivision, which, besides giving authority to sell and to mortgage lands for the benefit of legatees and for the purpose of satisfying any charge thereon, also authorizes the leasing of lands for such purpose, that the claim of the right to receive the rents and profits of land and to apply them from time to time in payment of any charge on the land, is made. It will be noted that by the two following subdivisions, 3 and 4, the trustee is specifically authorized, by 3, to receive the rents and profits of lands, to apply them as they are received in the first case, and, by 4, to accumulate them for the purposes authorized by, and within the limits prescribed in, the first article of the title, and, while subdivision 2 does not in terms authorize the trustee to receive the rents and profits of land, it is sought to give to the word "lease" such a construction as will import into the subdvision that authority. In other words, notwithstanding two of the four subdivisions of section 55 expressly authorize the trustees to receive the rents and profits of land, while the other two subdivisions do not, but instead treat of the leasing of lands precisely as of their selling and mortgaging, it is proposed to give to the word "lease" appearing in that connection, such scope and effect as will permit the creation of a trust for the leasing of lands by which there can be an accumulation in violation of the provisions of sections 37 and 38, to which subdivision 4 of section 55 applies; and the strongest argument ever presented in support of that contention is made by the learned justice who, in *Becker* v. *Becker* (13 App. Div. 342–349), says: "It is the common eulogium of the Revised Statutes that in no other compilation of law are technical terms and words of art used with more precision or as appositely as in that work." The argument by which the conclusion is reached that the second subdivision authorizes the creation of an express trust for the purpose of the accumulation and application of the rents and profits of land in

payment of mortgages or other charges thereon, is in brief that the word " lease " must be given its strict definition, as a contract for the possession and profits of lands and tenements on one side and a recompense of rent or other income on the other, and as the reception of rent is the fundamental idea connected with a lease, and the relation of landlord and tenant must be established in order that the landlord may receive the rent, it follows that it was the intention of the revisers in the use of the word " lease " to authorize the leasing of lands for a long or short period for a fixed annual rental, or to work on shares with authority in the trustees to apply the net rent, or net income, or profits resulting therefrom, in the payment of mortgages or other liens upon the whole or some part of the real estate devised in trust.   It must be conceded that if there were no other provisions of the statute bearing directly or indirectly upon the subject of the receipt of rents and profits of lands and their accumulation than is to be found in subdivision 2, the argument to which I have referred could not well be met.   But as it is, we find that by giving to the word " lease " that full force and effect which it is urged can be given, it necessarily results in permitting the creation of a trust by which may be increased a testator's estate by adding to its capital the rents and profits of land in violation not only of the spirit, but of the express letter of the statute as found in sections 37 and 38 of the same title.

Again we find that the authorization to lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon, is to be found in a subdivision which is in all other respects (and I think in respect to leasing as well) a provision for alienation, and not for the suspension of the power of alienation.   The trusts therein authorized are to sell land, or some interest in it, the land descending subject to the execution of the trust, which may include either the power to sell or the power to mortgage, or the power to lease for a gross sum to be applied by the trustee for the benefit of legatees, or in satisfaction of any charge thereon.   In that connection, it should be observed that the two following subdivisions pro-

vide in express terms that the trustee should receive the rents and profits of lands, and it is significant that the opening sentence of each of such subdivisions should employ that language when, in the second subdivision, there is no suggestion that the power to receive rents and profits is conferred. Again, it is significant that whereas sections 37 and 38 provide in terms for an accumulation of the rents and profits of real estate for the benefit of one or more minors, and prohibit the accumulation of such rents and profits for any other purpose, the fourth subdivision of section 55 should provide that an express trust may be created for that purpose. Thus, the revisers open section 37 with an authorization for "An accumulation of the rents and profits of real estate," and. close section 38 with the declaration : "All directions for the accumulation of the rents and profits of real estate, except such as are herein allowed, shall be void ;" while subdivision 4 of section 55, which authorizes an accumulation for the purposes expressed in sections 37 and 38, empowers the trustee " to receive the rents and profits of lands." A careful repetition of the quoted words, in each of the sections 37 and 38 and subdivision 4 of section 55, in view of the known accuracy of the revisers, strongly indicates an intention to exclude from a trust to mortgage, sell or lease lands, the right to receive the rents and profits of lands.

There is a meaning that can be given to the word " lease," in the connection in which it is used, which will make all of the provisions that we have been considering harmonious, and give to sections 37 and 38, prohibiting an accumulation of income, except for the benefit of minors, their full force and effect; and it would seem as if it were the plain duty of the court to so construe the statute as to harmonize the several provisions and at the same time effectuate the general policy of the statute. The sense in which the word " lease " is employed cannot be better portrayed than in the language of Presiding Justice VAN BRUNT in *Cowen* v. *Rinaldo* (82 Hun, 479–485) : " The evident intention of the statute was the creation of a trust to sell land and receive the proceeds thereof for

the benefit of creditors, or for the benefit of legatees, or for the purpose of satisfying any charge thereon, to mortgage land and receive the proceeds thereof for the benefit of legatees or for the purpose of satisfying any charge thereon, and to lease lands for a given sum which the trustee is to receive for the benefit of legatees, or for the purpose of satisfying any charge on said land, the fee of the land descending." That construction seems to me, in view of the other provisions of the statute, the natural one, and, therefore, the one that should be adopted.

I come now to a consideration of the cases bearing upon this question. The first case is that of *Hawley* v. *James* (16 Wend. 62). It was decided in 1836, some eight years after the enactment of the Revised Statutes. It is there held that subdivisions 1 and 2 of section 55 provide for a trust for alienation for the purpose of paying debts and legacies and charges on real estate, but not for a trust to receive the rents and profits of lands devised to trustees. Judge BRONSON says in the course of the discussion: " There may be some difficulty in ascertaining why the word *lease* was inserted in the second subdivision, and if we attach to it all the consequences which may be deduced from the common-law doctrine in relation to the power of making leases, it will include the right to take rents and profits. But that consequence will not follow in this case, for the reason that it would be against the manifest intent of the legislature; and it is one of the first and most important rules of interpretation, that a statute shall be so construed as to carry into effect the intent of the law-makers.  *  *  *  The first subdivision authorizes a trust ' to *sell* lands for the benefit of creditors.' This is a trust for alienation, and it would have been absurd to subject it to a provision against perpetuities. The second subdivision is of the same character. It authorizes a trust to ' *sell, mortgage* or *lease* lands for the benefit of legatees, or for the purpose of satisfying any charge thereon.' A *mortgage* is one mode of aliening the estate or a portion of it equal in value to the mortgage debt. In this case as well as where an absolute fee

is transferred, the trust is at an end the moment the convey-
ance is executed, so far as relates to any power over the estate.
The trustee has no further office to perform but that of
making the proper application of the money.   There is no
suspense of the power of alienation, and it would therefore
be idle to provide any safeguard against perpetuity.   Was the
word *lease* in this connection used for the purpose of author-
izing a trust of a different character ?   I think not.   *   *   *
If there is any possible way in which the power to lease can
be exercised without suspending alienation, effect can be given
to every word in the subdivision without contravening the
manifest intent of the legislature.   It is a power to make
leases for the benefit of legatees, and I see no objection to
demising the land directly to the legatee at a nominal rent for
a period long enough to satisfy the legacy : or in the case of a
charge on the land, leasing it directly to the person entitled
to the debt for a term which will satisfy the charge.   It may
also, I think, be leased to a third person, reserving the rent to
the legatee or person having the charge."

The opinion of Judge BRONSON in that case, written as it
was shortly after the enactment of the Revised Statutes and
showing as it does careful consideration of the subject, has
generally been regarded as the correct construction of those
sections and as conclusive upon the subject.   About eight
years later the chancellor in *Parks* v. *Parks* (9 Paige Ch.
107), had before him for consideration a will which involved
many interesting questions and among the numerous provis-
ions considered was one devising to a trustee in trust certain
lots, from the rents and profits of which he was directed to
pay the interest on the incumbrances, and use the profits and
income for the support of *cestuis que trust,* and to employ as
much as should not be required for that purpose in the reduc-
tion of the principal of the incumbrances.   The chancellor,
without referring to *Hawley* v. *James* (*supra*) and without
argument, says : " The Revised Statutes also have authorized
the creation of an express trust to lease lands for the purpose
of satisfying a charge thereon.   The authority of the trustee,

therefore, to pay the interest of the incumbrances out of the rents and profits of these lots in the first place, and to apply so much of those rents and profits as might be spared from the support of the *cestuis que trust*, to reduce the principal of the incumbrance on their respective lots, was therefore valid; and should be carried into effect, according to the intention of the testator."

The subject was not otherwise considered, and in view of the elaborate discussion of the question when it was before the court in *Hawley* v. *James*, it would seem as if that question had not been the subject of debate by the counsel who appeared before the chancellor and that his disposition of it was one of first impression. It is true that the decision in the *Parks* case was subsequently affirmed by the Court of Errors (see foot note, 9 Paige Chan. Rep. 127). But we have no evidence that this question was the subject of contest on review. It is now said that the rule laid down by the chancellor in *Parks* v. *Parks* was adopted by this court in *Leggett* v. *Perkins* (2 N. Y. 297), and *Van Schuyver* v. *Mulford* (59 N. Y. 426). But as we read those decisions no such question was involved. In *Leggett* v. *Perkins* the inquiry was whether a trust to receive the rents and profits of lands and pay them to a trustee, could be sustained under the third subdivision of section 55, which authorizes a trust to receive the rents and profits of land and to apply them to the use of any person. Upon that question *Parks* v. *Parks* was cited with approval, but that in nowise constituted an approval of all the other questions passed upon by the chancellor in that case.

In *Van Schuyver* v. *Mulford* (*supra*) the will of M. gave to his wife the rent, income and profits of his estate during her life, and if they were insufficient for her support, he directed his executor and trustee to pay to her from the body of the estate what should be necessary from time to time, and in another clause he directed that after the death of his wife the rents, income and profits should be paid to his two daughters during life, after whose death the estate was devised to

.the issue of his said daughters. *Parks* v. *Parks* was cited
upon the question presented by that will, but it has no bear-
ing upon the question we are now considering. In *Cowen* v.
*Rinaldo* (*supra*) the very question now before us was under
consideration, and the court, upon the authority of *Hawley* v.
*James*, and in a very careful opinion by the presiding justice
of the court, holds that a trust providing for the collection of
rents, income and profits of real estate, and, after the payment
of certain legacies and the interest on mortgages, the applying
of the remainder of the rents, together with the income and
principal of the personal estate, to the paying off and discharg-
ing of the principal of mortgages on the real estate, was void.
In *Becker* v. *Becker* (13 App. Div. 342) the court refused to
follow this decision of the General Term and that in *Hawley*
v. *James*, and elected instead to treat the paragraph which I
have quoted from the long opinion of the chancellor in the
*Parks* case as settling the question adversely to the decisions
preceding and following it. The decision was made by a
divided court and was not required, as I have attempted to
show, by the decisions which have preceded it. The decision
under review was made by the same court, which relied
principally upon its previous decision in *Becker* v. *Becker*.

I have thus referred to all of the cases to which our atten-
tion has been called, in which the question up for decision
was directly involved, and it is apparent that this court is at
liberty, to say the least, to construe the statutes in accordance
with the reasoning of Judge BRONSON in *Hawley* v. *James*,
which not only results in producing harmony between sections
37, 38 and 55, but enables the statute to work out that policy
which the revisers intended, a policy which in their wisdom
was deemed for the public good and which has not since been
seriously challenged.

But it does not follow that the entire trust should be held
to be void because of the direction to unlawfully accumulate
a part of the income. The rule is that where there are two
trust objects, one of which is principal and the other alterna-
tive, and the latter only is void, the principal trust may stand

and the other fall. (*Schettler* v. *Smith*, 41 N. Y. 328; *Tiers* v. *Tiers*, 98 id. 568; *Cross* v. *U. S. Trust Co.*, 131 id. 330.) That rule is applicable to this situation and should govern it. The primary object of this testator, by the creation of this trust, was to provide an income for his wife, the accumulation for the purpose of paying the mortgages being secondary. Indeed, nothing was to be applied in payment of the mortgages until after the sum named by the testator should in each year be paid in full to his wife, the disposition of the balance being a mere ulterior contingent direction, entirely distinct from the primary trust. That being so, the former is separable from the primary trust and will not be allowed to invalidate it, and after the purposes of the primary trust have been satisfied, the surplus income must be distributed among those entitled to the next eventual estate.

In all other respects we agree with the views expressed in the opinion written at the Appellate Division.

The judgment should be so modified as to accord with this opinion, and as thus modified affirmed, with costs to the appellants in all courts, and to the respondent in this court, payable out of the estate.

VANN, J. I concur in the result, because the will directs the application of rents, arising from lands not mortgaged, in payment of mortgages upon other lands, in violation of section 55 of the Statute of Uses and Trusts, which, in my opinion, authorizes the leasing of lands in the usual way, but for the purpose only of satisfying any charge upon the particular lands leased. I do not agree with the conclusion of the chief judge that a valid trust cannot be created to lease lands, in the ordinary sense of the word "lease," for the purpose of discharging liens upon the specific lands directed to be leased. I feel bound to follow the later case of *Parks* v. *Parks* (9 Paige, 107), where the question was before the court and was necessarily decided by the chancellor and, on appeal from his decree, by the Court of Errors also, rather than the earlier case of *Hawley* v. *James* (16 Wend. 62), where the

question, although ably discussed in one of the five opinions delivered, was not before the court, and no opinion was adopted by the court.

GRAY, O'BRIEN and BARTLETT, JJ., concur with PARKER, Ch. J. MARTIN, J., concurs in result, and VANN, J., concurs in memorandum; HAIGHT, J., dissents.

Judgment accordingly.