WILLIAM E. THORN, as Surviving Executor of and Trustee
under the Will of WILLIAM T. GARNER, Deceased, Appel-
lant, *v.* MARCELLITE THORN DE BRETEUIL et al., Respond-
ents, and ELMA GORDON-CUMMING et al., Appellants.

1. WILL — WHEN DIRECTION TO EXECUTORS AND TRUSTEES TO
CARRY ON TESTATOR'S BUSINESS FOR A PERIOD OF LIVES, AND AFTER
DEDUCTING THE AMOUNTS TO BE PAID FOR SUPPORT AND MAINTENANCE
TO ADD ANNUAL PROFITS TO CAPITAL OF ESTATE, IS IN CONTRAVENTION
OF STATUTE AGAINST ACCUMULATIONS. Where a testamentary provision
directed testator's executors and trustees to carry on his business for
and during the lifetime of his wife and a designated daughter, and after
deducting from the annual profits thereof the amount of the income
directed to be paid annually to his wife and the annual payments
directed to be made to his children for their support and maintenance
by way of advancement, to add the remainder of such annual profits
to the working capital of his business until each of his children should
attain the age of twenty-five years and from the time that each attained
that age to pay to such child the full proportionate sum per annum
to which she might be entitled from out of the profits of the business,
after deducting the amount directed to be paid annually to his wife,
until the death of his said wife and daughter, upon the happening of
which events the business should be closed and the entire estate settled
and divided among his children or their descendants if any should have
died leaving children, *per stirpes*, such provision is the equivalent of a
direction for the accumulation of the interest, income and profits of the
testator's real and personal estate, and although the accumulation is of
the profits from a going business and, therefore, unlike that of the income
from a fund, as of specific rents from real estate or of specific income
from securities, it is, so far as it directs an accumulation after the chil-
dren attain their majority, in contravention of the letter and of the spirit
of the statutes of this state against accumulations. (1 R. S. 726, §§ 37,
38, and 1 R. S. 773, §§ 3, 4.)

2. SAME — WHEN BENEFICIARIES ARE ESTOPPED FROM CLAIMING THAT
SUCH PROVISION OF THE WILL AND ACTS OF EXECUTORS AND TRUSTEES
IN CONFORMITY THEREWITH ARE INVALID. Where after the probate
of such will, the testator and his wife having died at the same time as the
result of an accident, leaving them surviving three children, all under
the age of fourteen years, the executors and trustees instituted an action,
to which said children were made defendants and in which they appeared
and answered by their guardians *ad litem*, in which they asked for a
judicial construction of the will and that the rights, powers, duties
and obligations of the plaintiffs, as executors and trustees, and of the

children of the decedent be ascertained and adjudged, and the judgment in such action determined that such executors and trustees had the power and authority to carry on the business of decedent, as directed in the will and commanded them to conduct and carry on the same character of business as was carried on by testator at the time of his death and that it was to be conducted as they deemed most advantageous for the estate, and that they were to expend in the future for the maintenance and comfort of the children not to exceed a certain sum annually, and the executors and trustees acting under such judgment carried on the business of the decedent, and after deducting from the profits thereof the amounts ordered to be expended for the children, added the remainder thereof to the capital of the business, and from time to time rendered their accounts in judicial proceedings, in which the children appeared and in which their accounts were examined and approved, the judgment having been confirmed by the subsequent judicial accountings and settlements, constitutes an estoppel of record which prevents the children of decedent, all of whom are over twenty-five years of age, from claiming, in an action brought by the sole surviving executor and trustee to obtain a judgment which should finally settle his accounts and permit him to resign his office in favor of a certain trustee to be appointed by the court, that the trust provisions of the will were invalid or that they were entitled to receive any part of the accumulations made by the executors and trustees by the addition of profits, arising from carrying on the business, to the capital thereof.

*Thorn* v. *De Breteuil,* 86 App. Div. 405, modified.

(Argued May 2, 1904; decided June 17, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 25, 1903, which modified and affirmed as modified a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Nathaniel S. Smith* and *Austen G. Fox* for plaintiff, appellant. There is no direction in this will for an accumulation, and the direction to carry on the business, and after deducting certain payments to add the surplus of profits and gains to the working capital, does not under the facts of this case contravene the statute against accumulations. (*Matter of Nesmith,* 140 N. Y. 609 ;

*Matter of Rogers,* 22 App. Div. 437 ; *Basil* v. *Lister,* 9 Hare, 177 ; *Vine* v. *Raleigh,* L. R. [2 Ch. 1891] 13 ; *Matter of Mason,* L. R. [3 Ch. 1891] 467 ; *Downs* v. *Collins,* 6 Hare, 418 ; *Willis* v. *Sharp,* 113 N. Y. 586.) The claim made by the adult defendants is barred by the decrees in the Surrogate's Court and four judgments in the Supreme Court, to which decrees and judgments the adult defendants were parties. (*Matter of Hawley,* 100 N. Y. 206 ; *Matter of Tilden,* 98 N. Y. 434 ; *Rudd* v. *Cornell,* 171 N. Y. 114 ; *Reich* v. *Cochran,* 151 N. Y. 122 ; *Pray* v. *Hegaman,* 98 N. Y. 358.)

*Peter B. Olney* for defendants, appellants. The direction in testator's will to his executors to prosecute and carry on " with my estate and property my present business under the firm name of Garner & Co.," for and during the lifetime of his wife and daughter Florence, and the survivor of them, and that all profits and gains arising from said business shall " after the sums set apart for the support of my wife and children are deducted be added to and form a part of the working capital of my estate," which provision is to be taken in connection with the provision in the 4th paragraph of the will that " as each child attained the age of 25 years, said executors shall pay over to such child or children the full proportionate sum per annum to which she or he may be entitled out of the profits of the said business after my wife's amount is paid her," does not contravene the statute against accumulations. (*Bateman* v. *Hotchkin,* 10 Beav. 426 ; *Vine* v. *Raleigh,* L. R. [2 Ch. 1891] 13 ; *Willis* v. *Sharp,* 113 N. Y. 536 ; *Matter of Nesmith,* 140 N. Y. 609.) The claim made by the adult defendants is barred by the decrees in the Surrogate's Court and four judgments in the Supreme Court, to which decrees and judgments the adult defendants were parties. (*Matter of Tilden,* 98 N. Y. 434 ; *Matter of Wood,* 70 App. Div. 321 ; *Matter of Hawley,* 100 N. Y. 206 ; *Pray* v. *Hegeman,* 98 N. Y. 358 ; *Reich* v. *Cochran,* 151 N. Y. 122 ; 2 Am. & Eng. Ency. of Law. 129 ; *G. N. R. R. Co.*

v. *Mossop*, 17 C. B. 140; *Aurora City* v. *West*, 7 Wall. 82.)

*James Byrne, Frederic R. Coudert, Lorenzo Semple, H. F. Wolff* and *Paul Fuller* for defendants, respondents. The will directs an unlawful accumulation of the gains and profits arising from the business of Garner & Co. (1 R. S. 726, §§ 37, 38; *Hascall* v. *King*, 162 N. Y. 134; *Remington* v. *Field*, 16 R. I. 509; *Sims' Appeal*, 44 Penn. St. 347; *Andrews* v. *Boyd*, 5 Me. 199; *Matter of Jones*, 103 N. Y. 621; *Downing* v. *Marshall*, 23 N. Y. 366; *Willis* v. *Sharp*, 113 N. Y. 586; *Bell* v. *Hepworth*, 134 N. Y. 442; *Saperstein* v. *Ullman*, 49 App. Div. 446; *Tempest* v. *Comoys*, 51 L. J. Ch. 785; *Matter of Brittlebank*, 30 Wkly. Rep. 99.) None of the adult defendants is estopped by any of the judgments recited in the complaint from asserting that the provision of the will for the accumulation of income is invalid, and demanding that the trustee be directed to pay over to her out of the estate in his hands such portion of the accumulation as belongs to her. (*Bell* v. *Merrifield*, 109 N. Y. 202; *Malloney* v. *Horan*, 49 N. Y. 111; *Felix* v. *Devlin*, 50 App. Div. 331; *Reynolds* v. *Æ. L. Ins. Co.*, 160 N. Y. 635; *Campbell* v. *Consalus*, 25 N. Y. 613; *People* v. *Johnson*, 38 N. Y. 63; *Woodgate* v. *Fleet*, 44 N. Y. 1; *Hymes* v. *Estey*, 116 N. Y. 501; *Stannard* v. *Hubbell*, 123 N. Y. 520; *House* v. *Lockwood*, 137 N. Y. 259.)

GRAY, J. This action was brought by the plaintiff, as the sole surviving executor and trustee under the will of William T. Garner, deceased, to obtain a judgment, which should finally settle his accounts, discharge him from all further responsibility and permit him to resign his office of trust in favor of a certain trustee named. He joined as parties defendant the testator's three daughters, who were his only children, their husbands and their children. By his will the testator, after directing the payment of his debts, had provided, in the second clause, as follows: "*Second.* I direct that my execu-

tors hereinafter named, or such of those named as shall
qualify as such, their survivors or successors, shall prosecute
and carry on with my estate and property, my present busi-
ness under the firm name of Garner & Co., for and during the
lifetime of my wife, Mary Marcellite, and my daughter Flor-
ence, and the survivor of them, and that all profits and gains
arising from said business shall, after the sums set apart for
the support of my wife and children, as hereinafter provided,
are deducted, be added to and form a part of the working
capital of my estate." In the third clause, the will directed the
executor to pay "out of the income and profits" of his estate
to his wife, during her life, annually, the sum of $70,000.
He gave to her all his household furniture, beds, bedding, pic-
tures, books, jewelry, horses, carriages, silverware and plate
and "the use and occupation, rent free, during her lifetime,"
of his residences in New York city, and at Staten Island ;
which provisions were to be in lieu of her dower right. By
the fourth clause he provided as follows: "*Fourth.* From
out of the surplus income of my estate my executors will sup-
port, educate and maintain my child or children surviving me
and such as may be born alive of my said wife within nine
months after my decease, until they severally attain the age of
twenty-five years. Up to such age such executors may advance
any child or children such moderate sum or sums of money as,
in their best judgment, will benefit or promote the happiness or
comfort of such child or children, such advances to be charged
against them. As each child attains the age of twenty-five
years, said executors shall pay over to such child or children
the full proportionate sum per annum to which she or he may
be entitled from out of the profits of said business, after my
wife's amount is paid her, with expenses thereof, and my
executors will so apportion and divide such income and profits
that my sons shall receive twice the sum per annum that my
daughters receive. * * * Upon the death of my said wife
and my daughter Florence, the said business shall be closed
and my entire estate settled and divided among my children
or their descendants, if any have died leaving children, *per*

*stirpes.*" He appointed four persons as the executors of his will, among whom was this plaintiff, and in August, 1876, letters testamentary were issued to all, save one of them who had previously deceased.

The testator and his wife died, as the result of an accident, on July 20th, 1876, leaving them surviving these three daughters, Marcellite, Florence and Edith; then infants of about eight, seven and two years of age respectively. At the time of the commencement of this action, in 1899, they had, each, attained the age of 25 years. After the executors had qualified, they assumed the management of the business of Garner & Co., under which name the testator had done a vast business in the manufacturing and selling of cotton goods and they have continued it, themselves, and the survivors, to the present time. The testator was the proprietor of, or possessed the controlling interest in, cotton mills and print works in this state and elsewhere; whose sales and financial transactions were conducted by, or with, Garner & Co. The plaintiff, also, asks that the accounts and transactions of Garner & Co. shall be judicially settled. The daughters of the testator and their husbands, in their answers, have demanded affirmative relief. They ask that the court shall construe the will and that it shall be adjudged that each of them is entitled to receive from the estate in the plaintiff's hands an amount, in addition to all other sums properly coming to them, equal to the difference between one-third of all the income up to the time each attained the age of 25 years and the amount which has been received by her. It was stipulated upon the trial that the amount thus claimed by the daughters as distributable among them is $3,748,314.84. They, also, claim that each is entitled to one-third of the proceeds of the sales of the real estate and household effects. The infant defendants, the children of the testator's daughters, appear by their guardian *ad litem* and have pleaded decrees of the Surrogate's Court upon accountings and judgments of the Supreme Court in actions by the executors, to which the testator's daughters were parties; alleging that they were bound thereby. They

say, in substance, that by such decrees and judgments the provisions of the will now called in question by the adult defendants had been adjudged to be valid; that the conduct of the executors, in adding all surplus profits and gains and income arising from the business of Garner & Co. to the working capital, had been approved and confirmed and, by reason thereof, that those defendants are now estopped and are barred from claiming in this action that those provisions should be declared to be invalid, or that the accumulations in question should be paid to them. Upon the issues thus made, the important questions for determination related to the lawfulness of the direction to the executors and trustees of the will to add to the working capital of the testator's business all profits and gains arising from the conduct thereof, after making provision for the maintenance, etc., of the testator's children; to the right of those children, now, in this action, to claim the direction to be invalid and the payment to them by the plaintiff from the estate of the excess of income added to the capital of the business, which each would, otherwise, have become entitled to, and to the right of the executors to include in the testator's estate and property, which they were to use in carrying on the business, his real estate and the household furniture and other personal property given to his wife in the third clause of his will.

Upon the trial proof was made of the actions and proceedings, which had been instituted by the executors and trustees in the courts; starting with their first accounting, which charged them, as trustees, with an estate amounting to upwards of $7,000,000. In 1879 they brought an action to obtain a judicial construction of the will and set forth in their complaint its provisions. They alleged that since the testator's death "the business of Garner & Co. has been carried on by the plaintiffs in the manner and as directed in and by the will;" that the personal estate was, mainly, in the business of Garner & Co., or in the stocks of manufacturing companies, used as incident to, or as part of, the business of Garner & Co.; that it was difficult to know, or ascertain,

what was the "surplus income" of the estate and what sum
might be considered proper to be used for the support, etc., of
the children.   They alleged that a judicial construction of the
will was necessary, " which will be binding upon all parties in
interest in the estate of said deceased," and judgment was
demanded " that the rights, powers, duties and obligations of the
plaintiffs as executors and trustees thereunder and of the chil-
dren of said deceased may be ascertained, adjudged, determined
and declared."   The three daughters of the deceased were
joined as defendants; who, being minors, appeared and
answered by their guardian *ad litem*.   Upon findings made
by the trial court, a judgment was entered, which followed the
findings and, among other things, adjudged that the plaintiffs, as
executors and trustees, had succeeded to the business and prop·
erty of Garner & Co., " with power and authority to carry on
the business of Garner & Co., as directed in and by said last will
and testament;" that the terms "present business" used in
the will mean that the plaintiffs were to conduct the same
character of business that was carried on by the firm at the
time of the testator's death; that it was to be conducted as
they deemed most advantageous for the estate and that they
were to expend in the future, for the maintenance and com-
fort of the children, not exceeding $25,000 a year.   There-
after, there were accountings in the Surrogate's Court and in
the Supreme Court, at various times; in which the accounts
showed the conduct of the business of Garner & Co. with the
addition to the working capital, from time to time, of all
profits and income arising therefrom, and not paid out to, or
for, the testator's daughters, down to 1893; when the present
plaintiff, having become the sole surviving executor and
trustee of the will, commenced an action in the Supreme
Court, making parties defendant the three daughters, two
of whom were upwards of 21 years of age, and their hus-
bands.   The complaint set forth the will, the various
accountings in the courts, in which decrees, or judgments,
had been rendered; alleged that the executors and trustees
had supported and educated the children, and had advanced

to them sums of money, and prayed for judgment that
the accounts of the executors and trustees, and his own as
survivor, should be settled to July, 1892, in relation to the
estate, to the conduct of the business of Garner & Co., and to
the children of the testator. The two adult daughters and
their husbands appeared and, by answer, put in issue the alle-
gations of the complaint, other than those relating to the death
of the testator and to the probate of his will. Edith, the third
daughter, appeared and answered by guardian *ad litem*. A
trial was had and a decree, or judgment, was rendered, which,
adopting the findings made by the referee, settled and approved
the accounts of the plaintiff and of his previous associates in
the trust, relating to the conduct and management of the
business of Garner & Co. and to the maintenance of the
children. It confirmed the previous accounts rendered by
the executors and trustees in the courts and it declared that
they had " prosecuted and carried on, under the firm name of
Garner & Co., with the estate and property of said William
T. Garner, deceased, the business in which testator was engaged
at the time he executed his last will and testament and at the
time of his death  *  *  *  in the same manner as directed
by the will." It adjudged " that out of the surplus income of
the estate this plaintiff, as sole surviving executor and trustee,
should continue to make payments for the support, education
and maintenance of the said Florence and Edith, two of the
defendants herein, until they severally arrive at the age of 25
years, (Marcellite, the other. child, having already arrived at
the age of 25 years) ; and that this plaintiff, in order to arrive at
the net profits, which are to be divided into three parts, and one-
third to be given to each of the said children upon their arriv-
ing at the said age of 25 years, should, and he hereby is ordered
and directed to, first deduct from the profits of the business
all such sums so paid out to the said Florence and Edith until
each of them arrive at the age of 25 years." The judgment
further directed that any advances made to either of the three
children, over and above the sums paid for their support and
education, were to be charged against each of them and to

bear interest at the rate of five per cent per annum until paid. The estate, with which the plaintiff was chargeable, had then increased to about $11,000,000, of which upwards of $9,000,000 were in the business of Garner & Co.

Between this last action, in 1893, and the present action none other was instituted and the plaintiff conducted, alone, the business of Garner & Co. in the same manner, as he and his former associates in the trust had done; increasing the capital used for the conduct of the business from time to time by the addition of all net income remaining after deducting payments to the three children by way of advances, or otherwise. The oldest child became 25 years of age in 1893. Florence, the second child, became 25 years of age in 1894, and Edith, the youngest, became 25 years of age in January, 1899.

The referee, before whom this case was tried, decided that the plaintiff's accounts were correct; that he should be allowed to resign as executor and trustee and that the corporation of Garner & Co., organized for the purpose, should be substituted in his place as trustee; that the provisions of the will directing the executors to carry on the testator's business and to add a portion of the profits to the working capital, until the daughters attained the age of 25 years, respectively, did not contravene the statute of this state against accumulations; that the daughters of the testator are not entitled to any part of the profits of the business, which were added to the working capital before they became 25 years of age, and that they were entitled, in equal shares, to the proceeds of the sales of the testator's real estate and of his household furniture and other property, mentioned in the third clause of the will, which should be paid to them out of the undistributed assets of the estate employed in the capital of the business of Garner & Co. Judgment was entered in accordance with the referee's decision. The adult defendants appealed to the Appellate Division, in the second department, and there, while in other respects affirmed, the judgment was not sustained so far as the same adjudged that the provisions

of the will did not contravene the statute against accumulations and that the testator's daughters were not entitled to any part of the profits of the business of Garner & Co., which had been added to the working capital of the business before they had attained the age of 25 years. In that respect the judgment was modified, so as to adjudge each of the daughters to be entitled to her proportionate share of such invested accumulations. In each court, it was held that none of the previous judgments, or decrees, is *res adjudicata*, as to any of the questions involved in this action.

By his will the testator created an express trust for the benefit of his wife and children. It was a single trust and was terminable upon the death of Florence, the survivor of the two lives named. Upon the expiration of the trust term, the trustees were to settle the entire estate and divide it among the testator's children, or their descendants, *per stirpes*. The will, plainly, discloses the intention of the testator to have been that, with the exception of the gifts to his wife of the life use of certain real estate and of household and other personal effects, all that composed his estate, at his death, should be taken by his executors, as trustees, for the purposes of his will and should be used in the conduct of his business during the trust term ; adding all profits and gains therefrom to the working capital of his estate, except as directed by the 3d and 4th clauses, or as appropriated thereby for the maintenance of his wife and children. It was, and is, a part of the provisions of our statutes regulating the creation of trust estates, that directions for accumulations of income, in whatever form, from real, or personal, estate, are only permissible when made for the benefit of minors and for the duration of their minority. (See 1 R. S. 726, §§ 37, 38 and 1 R. S. 773, §§ 3, 4.) The Appellate Division has adjudged unlawful this testator's direction that the profits and gains of the business, which his executors were to conduct, should be added to the working capital of his estate. It was the opinion of that court that such a direction was the equivalent of a direction for the accumulation of the rents and profits and of the interest,

income and profits of the testator's real and personal estate, and, therefore, that it was in contravention of the express provisions of the statutes of this state against accumulations. I think we must agree with that view of the provision of the will and, if there were nothing more in this case than the consideration of that question, we should have to affirm the judgment of that court. If it were possible to except such a case from the operation of the statute, no stronger argument could be made than is to be found in the opinion of the very learned referee. The basis of his reasoning, as I apprehend it, is that this direction of the will was not the creation of an estate out of which rents and profits were to arise, within the meaning of the statute, and that the profits of the business were not profits within the purview and intendment of the statutes. A distinction is drawn by him between the receipt by trustees of profits from a business, which they are to conduct, and the receipt by them of an income from an estate consisting in investments in the usual forms of real estate, or of securities; the words rents, profits and income, when used in relation to real and personal property, having a technical meaning, which is not to be attributed to them, when they arise from the discretionary management of a manufacturing business and are ascertained, at stated periods, by striking balances in accounts, which represent the differences between expenditures and receipts. That a distinction exists in the origin, or source, of what constituted the income of the trust estate, which the trustees were to make application of, must be conceded; but the statute is too comprehensive in its terms to allow of a case being excepted from its operation upon any such distinction. The prohibition is against all directions for accumulation. As it was well observed in the opinion of the Appellate Division, "any direction as to profits must be, either for accumulation, or for application. If it be for the former, then it is opposed to the spirit of the statute, as much as if the testator had, in express words, directed that the profits should constitute an estate. It is the fact of the accumulation, not the form of it, that must control. It is not

the nature of the property created by the accumulation, but the accumulation, that offends the statute." The statutory prohibition has, at all times, been against all directions for the accumulation of the profits of, or income from, real, or personal, property, except such as was allowed by the statute. The exception, whether the direction related to the income from real, or from personal, property, permitted an accumulation to be directed, only, when made for the benefit of minors and to terminate at the expiration of minority. Indeed, our statute against accumulations is more rigid in its prohibitive features, than is the English statute, known as the Thellusson Act, upon which its enactment was founded ; for the English act permitted of an accumulation, measured in its period by the life of the settlor, or by an absolute term of twenty-one years after his death, as well as by minorities.

The direction in this will is that the testator's business should be carried on with his " estate and property " and that comprehended the use of all of his real and personal property for that purpose, except what the 3d clause describes and which, by reason of the death of the wife, went, at once, to the testator's children, as heirs, or as next of kin, because undisposed of by either parent. It would seem to be evident that to use, in the carrying on of the business, the testator's " estate and property " is to apply thereto all income, however it may be produced, from either form of property. The execution of the trust created by this will, necessarily, involved the absorption of the estate in, and its devotion to the objects of, the business of Garner & Co., and the addition to the " working capital of the estate " of the profits and gains of the business, over and above what were to be applied to the maintenance of the children, meant, simply, the accumulation of the surplus income of the trust, however complex the methods and means by which that income resulted. Such an accumulation, it seems, also, clear, was planned by the testator, as the opinion below points out and as the fourth clause makes evident, not upon the theory that his extensive business was to

be maintained thereby; but because his children would not require, and should not be intrusted with, all of the income in the trustees' hands before they attained the age of 25 years. "The paramount consideration," as it is said by Mr. Justice JENKS below, "was the provision for his children, not the maintenance of the business * *· * for the application to the working capital of the excess of profits is not to cease in any period of the business * * * but at a fixed period in the life of each child."

The intention of a testator, however praiseworthy, cannot prevail, where to sustain it will result in an evasion of the law and, although the accumulation in the present case is of the profits from a going business and, therefore, technically, other than of specific rents from real estate, or of specific income from securities, it is, nevertheless, in contravention of the letter and of the spirit of the statutes. It was the object of the statutes to prevent the creation of a trust estate for the purpose of an accumulation, whereby the beneficial enjoyment of the income would be postponed, except as permitted, (*Pray* v. *Hegeman*, 92 N. Y. 508), and in the creation of this trust that object was defeated by the direction in question.

In *Hascall* v. *King*, (162 N. Y. 134), the question related to the validity of the direction of the testator to apply part of the income of a trust estate to the payment of mortgage debts and it was held that an invalid accumulation was directed, within the meaning of the statute; because the result would be to increase the principal of the estate to the extent that the mortgage indebtedness was reduced by payments from income. Chief Judge PARKER pointed out, in his opinion, that, if such a direction might prevail, it was a way by which the purpose of the statutes might be thwarted. The decision in *Hascall* v. *King* followed the doctrine of the case of *Pray* v. *Hegeman* (*supra*). A testator may, competently, direct that his business shall be carried on; but such a direction, simpliciter, will be construed as an authority to carry it on

with the funds already invested in it, at the time of the tes-
tator's death. ( *Willis* v. *Sharp*, 113 N. Y. 586.) The trust
of this will involved, in its execution, the carrying on of the
business of Garner & Co. and that management may have
necessitated, probably did necessitate, the application of some
of the earnings from the business to the perfecting of its
earning capacity, or to its protection in various ways, and the
action of the trustees in doing so, if seen to have been a
reasonable exercise of discretion, would be sustained by the
courts. But that is quite a different thing from a direction
to keep adding to the working capital all profits, or surplus
income, not appropriated to the support of the beneficiaries.

In *Matter of Nesmith*, (140 N. Y. 609), where the trus-
tees were given the sole direction and management of the
testator's warehouse business, they used a portion of the income
in the erection of a shed, which was found by the trial court
to be necessary to the successful transaction and retention of
valuable parts of the business; but the objection was made
that the appropriation of the money was unlawful. It was
held in this court "that the earnings of the property, which
they (the trustees) were to account for, might well be dimin-
ished by a disbursement necessary for an improvement, which
was a protection of the trust business as a going concern,
without violating the direction as to their distribution among
the heirs. What the law forbids is an accumulation of either
rents, profits, or income, except in the manner and for the
period of time specified in the statutes. * * * A dis-
cretionary power to make a disbursement of income, in the
course of the management of the trust property, may be
deemed to be within the testamentary intention and, if it be
restricted to such matters as tend to preserve it, or to make it
efficient for earning purposes, there can be no violation of the
statute." Nothing was decided, or intended to be decided, in
that case, which might be availed of as an argument to evade
the just operation of the provisions of our statutes. The
*Nesmith* case and the present case are not parallel; for, in

the former, the exercise by the trustees of a reasonable discretion, in devoting a part of the earnings of the business to the addition of a building, which the nature of the storage business rendered essential to its protection, was not considered as a violation of the statutes; while, in this case, the trustees were directed to retain, and to add to the capital of the estate in their hands, what earnings were not expended upon the children. The elaborate discussion of this question at the Appellate Division' renders it unnecessary to say more in expression of our opinion that the testamentary direction of the testator was in violation of the statutes.

But there is another and, as it seems to me, a determinative question in this case. I am of the opinion that the adult defendants, the testator's daughters, were barred from setting up any claim to the distribution among them of so much of the capital of the estate in the plaintiff's hands, as would represent the aggregate of the profits and gains, which had been added thereto, from time to time, in the management of the business. The judgment in the action for the construction of the will, brought by the executors in 1879 against the beneficiaries of the trust, worked an estoppel by record, and must be regarded as having constituted the basis for all of the trustees' subsequent acts. It constituted the working plan for the management of the trust estate; which received emphatic recognition in the judgment entered in the accounting action of 1893. In the action of 1879, the complaint of the executors set forth the whole will and alleged that its judicial construction was desired and was necessary, in order that the plaintiffs might have such direction as to the extent of their powers and duties as executors, as " will be binding upon all parties in interest in the estate of the deceased." Judgment for such a construction was prayed for, that "the rights, powers, duties and obligations of the plaintiffs, as executors and trustees, * * * and of the children of the deceased may be ascertained, adjudged, etc." The judgment determined that the plaintiffs " as executors and trustees * * *

succeeded to the business and property of Garner & Co., *with power and authority to carry on the business of Garner & Co. as directed in and by said last will*" and " that the terms ' present business ' in the will  \* \* \*   are to be understood that plaintiffs are to conduct and carry on the same class and character of business as was carried on by Garner & Co. \* \* \* as directed by their judgment \* \* \* and as they deem best and most advantageous for the estate, etc." In my judgment, this was a case where the judicial construction sought for this will, necessarily, involved, and was to comprehend, the validity of its trust provisions, and was to be the chart of the trustees' powers and duties, as to their acts and as to the rights of the beneficiaries of the trust. It must be borne in mind that, while the execution of the trust, in carrying on the business, might be enforced against the trustees, if they undertook its obligations, and while the beneficiaries could but assent to the terms of a trust created for their benefit, it was not necessary, nor was it an inevitable part of the testamentary provision, that the trustees should follow a direction, which looked to an unlawful accumulation of the profits, or of the income, through the plan of their addition to the working capital of the estate. If anything was conspicuous in this will, it was its plan to postpone the full enjoyment of the income by the beneficiaries, until they reached the age of 25 years. The will created a single trust, and it was manifest that what, in effect, constituted the trust fund to be held for the children was to be accumulating, as to each child, until she attained the age, arbitrarily fixed by her father. That was the salient and distinguishing feature of the instrument, however read. The executors were confronted by duties and responsibilities in their assumption of the trust, as to which they, very properly and wisely, desired to be directed. We must assume, in all reasonableness of intendment, that the demand for a construction of this will involved, as one of its primary considerations, the question of how the trustees were

to execute its provisions as to carrying on the testator's business with his "estate and property" and as to the application of the income resulting from their management of their trust. Construction would have been of little use, which did not so adjudge as to the "obligations" of the executors and as to the "rights" of the children, as to be binding upon them thereafter, in such material points. So, when the judgment declared that the plaintiffs, as executors and trustees, succeeded to the business of Garner & Co. "with power and authority to carry it on as directed by the will," no effect could be given to the adjudication which did not carry with it, logically, if not expressly, the determination that the direction to accumulate profits and gains in the form of a working capital should be obeyed. Through that judgment this plaintiff and his then associates in the trust entered upon their duties; following the direction of the will in carrying on the business; accumulating the capital of the trust estate; and, from time to time, rendering accounts in judicial proceedings, which showed their management of the estate. In each judicial proceeding, the previous accounting was inquired into and approved, until the year 1893; when, in the accounting action then brought, a judgment was had, which, specifically, adjudged that Marcellite, the oldest child, having attained 25 years of age, was entitled to receive one-third of the profits of the business of Garner & Co.; that Florence and Edith would only become entitled to their proportionate participation in those profits when they attained that age, and that advances to any of the children, over and above the sums paid out for their support, were to carry interest against her until paid. I do not say that the judgment upon that accounting worked an estoppel, (See *Bowditch* v. *Ayrault*, 138 N. Y. 222); but it is, nevertheless, a fact, or circumstance, of considerable weight, when considering the argument against giving to the judgment in the construction suit of 1879 the force of an estoppel of record. It furnishes a sound legal reason, and a controlling equitable

6

consideration, for our application of the rule of estoppel. The well-settled general rule of estoppel, as stated in *Pray* v. *Hegeman*, (98 N. Y. 351), and as repeated more recently, in *Reich* v. *Cochran*, (151 N. Y. 122), is " that the estoppel in a former judgment extends to every material matter within the issues which was expressly litigated and determined, and also to those matters which, although not expressly determined, are comprehended and involved in the thing expressly stated and decided, whether they were or were not actually litigated or considered. It is not necessary to the conclusiveness of a former judgment, that issue should have been taken upon the precise point controverted in the second action. Whatever is necessarily implied in the former decision is, for the purpose of the estoppel, deemed to have been actually decided." In Herman on Estoppel, (§ 125), a general rule is deduced from a number of cases that the principle of *res adjudicata*, which is a phase of estoppel by record, " not only embraces what actually was determined, but, also, extends to every other matter, which, under the issues, the parties might have litigated in the case; to everything within the knowledge of the parties, which might have been set up as a ground of relief or defense." This latter statement may be thought rather broadly made; but it is not out of harmony with the reason for the rule of finality in judgments; namely, the policy and expediency of accomplishing the ends of justice by a single decision upon the rights of parties. The rule has, also, been stated, upon the authorities, rather appropriately to this case, in this wise; that the estoppel of a judgment by a court of competent jurisdiction extends to those matters which, though not expressly determined, " are comprehended and involved in the thing expressly stated and decided. Hence, it is not necessary to the conclusiveness of the former judgment that issue should have been taken upon the precise point controverted in the second action." (Am. & Eng. Ency. of Law, vol. 24, p. 766.)

Was not the rule satisfied, in its essential and reasonable

requirements, in this case? Is there room for doubt that the precise point now raised by the daughters of the testator was comprehended in what was decided in the construction suit? Upon that judgment, in 1879, the trustees have proceeded with the business; accounting for the accumulation of the surplus income of the estate, as part of the capital in their hands, and receiving the apparent approval of the beneficiaries and the express approval of the court. I do not think the ends of justice would be promoted by allowing the claims of the adult defendants.

I should say that the point of this estoppel by record is not in this, that an issue was raised by way of suggestion in the complaint, or of allegation in the answer, in the construction suit as to the validity, or invalidity, of the direction in the second clause of the will; but it is in this, that the trust in the will presented a dominating, or conspicuous, feature, in the aspect discussed, which the judgment in the construction suit must have determined, or, impliedly, did determine, and, therefore, was to be regarded as accepted by the parties in interest as the chart of the trustees' powers and duties. The decision of this court, in *Pray* v. *Hegeman*, (98 N. Y. 351), is an authority, much in point. Hegeman was executor and trustee under the will of Austin D. Moore, and testator's son, a beneficiary of a trust created thereunder, had brought an action against Hegeman to have the trust declared invalid, as unlawfully suspending the power of alienation, and to recover the share of the estate and the accumulations. The judgment went against the plaintiff and adjudged the trust provision to be valid. Whether the will controverted the statute against accumulations was a question not specifically raised, nor specifically passed upon by the judgment. That case was affirmed in this court (72 N. Y. 376). Subsequently, Pray, a judgment creditor of the younger Moore, brought an action against Hegeman, the executor and trustee and Moore, to reach the accumulations in Hegeman's hands, as belonging to Moore. This court held, (92 N. Y. 508), upon a first trial,

that the accumulation directed by the will was illegal; but, because of the imperfect presentation of the facts, a new trial was ordered. Upon the second trial, a son of Moore, an infant, set up, as a bar, the prior judgment in *Moore* v. *Hegeman* and a judgment was had that the prior judgment pleaded constituted an estoppel. When the case reached this court, again, the judgment was sustained, (98 N. Y. 351), and in the opinion, delivered by Judge ANDREWS, the general rule, was stated, as I have quoted it above. Judge ANDREWS observed that "the first action was, in general terms, to recover the whole trust estate, on the ground that the entire trust was void. The present action is to recover the accumulations, on the ground that the trust, though otherwise valid, was, as to the accumulations, void. If the plaintiff in the first action was entitled to a judgment establishing his right to the accumulations, then manifestly this action was for the same cause. It must be true, as a general principle, that subordinate rights, or questions, which are branches of a larger right, or question, put in issue, and which under the pleadings may be determined and as to which relief may be given in the action, although the principal, or main, relief is denied, are determined by a judgment on the merits, denying all relief." The principle of the decision, as to the estoppel worked by the previous judgment, was in this, that whatever is necessarily implied in the former decision is, for the purpose of the estoppel, deemed to have been actually decided and that it is not necessary to the conclusiveness of the former judgment that issue should have been taken upon the precise point controverted in the second action. That was the situation in this action. When the executors of Garner asked for a judicial construction of his will and that their powers and obligations and the rights of the children should be declared and adjudged, it was implied in the judgment rendered that they were authorized to carry on the business in the manner directed in the will and that the direction to add all profits and gains, not otherwise appropriated, to the working capital of his estate,

was valid.   To apply a test suggested by Judge Andrews, in *Pray* v. *Hegeman*, if the defendants in the suit brought for the construction of Garner's will had appealed from the judgment and had raised the point that the direction as to the addition of profits to capital violated the statutes against accumulations, would not the appellate court have been bound to reverse the judgment, so far as it determined that the executors should carry on the business as directed in the will? If it was necessary to adjudge that the executors should carry on the testator's business, as his will directed it to be done, there was, in fact, such an adjudication bearing upon the point now raised, as to have rendered the judgment vulnerable upon appeal.   But if that be so, then it is no unreasonable stretch to apply the rule of estoppel to this controversy.   It seems to me that this case is brought well within the line of authorities, to which counsel directed our attention and which determine the conclusiveness of the estoppel of a prior judgment by the test of whether the issue in the subsequent action was involved upon the prior trial and was expressly, or impliedly, determined as material to the judgment.   When all is considered, it seems to me an irresistible conclusion that, if the judgment of 1879 had any effect, it had that of giving authority to the executors to follow the testator's directions.   The question stood plainly out in the will and in the pleading.   Knowledge of the statutes was chargeable to the court and to the guardian of the infant defendants.   The acts of the plaintiff and of his former associates in the trust have not been questioned by those concerned, in all the years intervening between the first judgment of 1879 and the commencement of this action in 1899.   The testator's children, though infant defendants, were as much barred by the judgment in the construction suit, as though they were adults.   (*Matter of Hawley*, 100 N. Y. 206; *Matter of Tilden*, 98 ib. 434.)   These infant defendants, the grandchildren of the testator, were barred by that judgment, equally with their mothers.   Their interests were purely contingent

and the court had before it all necessary parties, having vested interests, and through them these infant defendants were represented. (*Pray* v. *Hegeman*, '98 N. Y. 351; *Giffard* v. *Hort*, 1 Sch. & Lcf. 386.)

If the bar óf an estoppel by record existed, it will not do to lift it through the suggestion that the accumulations are separable from the capital of the estate · in the plaintiff's hands. The claims of these adult defendants were barred, or they were not. Not only the legal rule of finality operates ; but equitable considerations of possible prejudice to remaindermen, or of possible prejudice to the investment of the trust estate, militate against our holding otherwise.

All other questions have been properly adjudged and I advise that the judgment of the Appellate Division be reversed, in so far as it modified the judgment of the Special Term, and that that judgment be affirmed ; with such modification, however, in its recitals, as that it shall adjudge that the adult defendants were estopped and barred from claiming that the provisions of the will were invalid, or that the daughters of the testator were, severally, entitled to receive any portion of the fund in the plaintiff's hands, which represents the accumulations made by the executors and trustees, and their survivors, and survivor, in the execution of the trust under the will, through the addition of profits, arising from carrying on the business, to the capital ; with costs to all parties appearing by counsel upon this appeal, to be paid out of the fund.

PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN, VANN and CULLEN, JJ., concur.

Judgment accordingly.